**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WAEL HAFEZ, individually and as Administrator of THE ESTATE OF SHAHLA IMAD AKKAD,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:26-CV-474** |
| **v.** | : | **(JUDGE MANNION)** |
| **POCONO MOUNTAIN REGIONAL POLICE, *et al.*,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

Pending before the Court is Pocono Mountain Regional Police's ("PMRP"), Officer Michael J. Cinamella's, and Officer Martin Ksepka's (collectively "Defendants") motion to dismiss Wael Hafez's ("Plaintiff") first amended complaint. (**Doc. 7**). For the reasons set forth below, Defendants' motion will be **GRANTED IN PART** as to Count II of the first amended complaint and otherwise **DENIED**.

## I. BACKGROUND[1]

The underlying cause of action is brought before the Court pursuant to 42 U.S.C. §1983. Shahla Iman Akkad ("Decedent") was the thirty-six-year-old wife of Plaintiff, and the mother and primary caregiver of two young children, T.H. (aged three) and M.H. (aged eight). (Doc. 6, ¶¶1-2, 12). Decedent suffered from severe depression and attempted to commit suicide on two occasions: (1) in 2021, when she contacted PMRP and advised that she wished to kill herself; and (2) in 2022, when she attempted to jump out of a moving vehicle while Plaintiff was driving. *Id.*, ¶¶9, 11.

On June 1, 2024, Decedent informed Plaintiff that she needed a break and left home at approximately 10:30 AM to go shopping. *Id.*, ¶13. Decedent asked Plaintiff to watch the children. *Id.* After tidying the house, Plaintiff decided to take the children clothing shopping in Allentown. *Id.*, ¶14. At approximately 8:00 PM, Decedent started calling and texting Plaintiff, asking where he and the children were. *Id.*, ¶15. At one point, Decedent sent a text to Plaintiff indicating that the house was on fire, which was something Decedent has falsely stated in the past. *Id.* After checking the security

[1] Because a motion to dismiss requires this Court to accept the facts asserted in the operative complaint as true, the Court refers to such facts for purposes of this motion.

cameras and confirming that the home was not, in fact, on fire, he and the children immediately returned home. *Id.*, ¶16.

Plaintiff and the children arrived at the home at approximately 9:30 PM to find that the house had been "torn apart" by Decedent. *Id.*, ¶17. Decedent destroyed the family's belongings, shattered dishes, and flipped and broke furniture, which had been strewn throughout the home. *Id.*, ¶18. Decedent shouted at Plaintiff, telling him to stay away from her because she intended to kill herself by taking an overdose of her prescribed insulin. *Id.*, ¶19. By 9:45 PM, Plaintiff contacted authorities and told the dispatcher that Decedent destroyed the house, threatened to commit suicide, and had been suicidal in the past. *Id.*, ¶20. The dispatcher instructed Plaintiff not to speak to Decedent until police officers arrived. *Id.*, ¶21.

At approximately 10:18 PM, two uniformed police officers from PMRP arrived at the home: Officers Cinamella and Ksepka. *Id.*, ¶22. Upon their arrival, Plaintiff informed the officers of Decedent's history of mental illness, suicidal ideations, treatment for suicidal ideations, and suicide attempts. *Id.*, ¶23. Plaintiff also told the officers that he was concerned about Decedent's wellbeing, believed her to be suicidal, and that she required instant medical care. *Id.*, ¶24. Plaintiff asked the officers to call an ambulance for Decedent

because he believed she was going to commit suicide by overdosing on her insulin. *Id.*, ¶25.

At the time of their arrival, Decedent locked herself in the bedroom. *Id.*, ¶26. As the officers approached the bedroom, Decedent's daughter, M.H., begged them to help her mother. *Id.*, ¶27. Decedent allowed the officers in the bedroom, and a fifteen-minute conversation between the officers and Decedent ensued. *Id.*, ¶28. When the conversation was over, the officers told Plaintiff that they believed the matter to be a domestic issue and would take no further action to assist Decedent or Plaintiff. *Id.*, ¶30. The officers told Plaintiff to let Decedent "cool down," and not to have any contact with her. *Id.*, ¶29. Before leaving the home, Plaintiff and M.H. pleaded with the officers, explaining their concerns that Decedent was going to kill herself—M.H. stated, "Can you please call an ambulance for my mom?" and the officers instructed her to stop talking. *Id.*, ¶31. Officers left the home at approximately 10:38 PM. *Id.*, ¶33.

Approximately one hour later, Plaintiff asked M.H. to check on Decedent, who remained in the bedroom. *Id.*, ¶34. M.H. discovered that Decedent was not breathing and unconscious on her bed. *Id.* Plaintiff redialed 911, and an ambulance arrived at approximately 11:30 PM. *Id.*, ¶¶35-36. Decedent was taken to St. Luke's Hospital in Bartonsville, and

pronounced dead on June 2, 2024, at approximately 2:00 AM. *Id.*, ¶36. The Monroe County Coroner determined that the cause of death was mixed drug toxicity, and the manner of death was suicide. *Id.*, ¶37.

On February 25, 2026, Plaintiff brought the underlying cause of action on behalf of himself and Decedent's estate. (Doc. 1). On June 3, 2026, this Court approved Plaintiff's request to file an amended complaint, which was filed the next day. (Docs. 5, 6). Plaintiff's first amended complaint brings four counts: (1) state created danger on the part of Officers Cinamella and Ksepka; (2) state created danger on the part of PMRP; (3) a survival action pursuant to Pa.C.S. §8302; and (4) a wrongful death action pursuant to Pa.C.S. §8301. (Doc. 6).

On July 15, 2026, Defendants filed the instant motion to dismiss and brief in support. (Docs. 7, 7-1). On July 27, 2026, Plaintiff filed a response to the motion. (Doc. 10). Defendants did not file a reply brief. Accordingly, this matter is now ripe for disposition.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-

unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" does not comply with Rule 8. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

As noted above, the Court at this stage accepts the complaint's factual allegations as true. This tenet "is inapplicable to legal conclusions." *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The federal pleading standard just described requires that district courts "conduct a two-part analysis." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's

> entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler*, 570 F.3d at 210–11 (internal citations and quotations omitted).

In considering a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the Court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,1261 (3d Cir. 1994).

Generally, the Court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103,108 (3d Cir. 2002); *Shane v. Fauver*,

213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III. DISCUSSION

Defendants argue that: (1) Plaintiff failed to adequately plead a state created danger theory against the officers; (2) Plaintiff failed to adequately plead a *Monell* claim against PMRP; and (3) Officers Cinamella and Ksepka are protected by qualified immunity. (Doc. 7-1). The Court addresses each argument in turn.

### A. §1983 Claims

Plaintiff brings Fourteenth Amendment claims against Defendants through §1983, which is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983; *see also Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020). This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws, shall be

> liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. §1983. "[§]1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D.Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

**a. State Created Danger**

"Although the Fourteenth Amendment does not generally guarantee an 'affirmative right to governmental aid or protection,' an exception exists when state actors create a danger that causes a victim harm." *Poe v. Southeast Delco Sch. Dist.*, 165 F.Supp.3d 271, 277 (E.D.Pa. 2015) (citing *Ye v. United States*, 484 F.3d 634, 636 (3d Cir. 2007)). The Third Circuit has "recognized that a state actor may be held liable under the 'state-created danger' doctrine for creating danger to an individual in certain circumstances." *Henry v. Cty. of Erie*, 728 F.3d 275, 281 (3d Cir. 2013) (citing *Morrow v. Balaski*, 719 F.3d 160, 176 (3d Cir. 2013)). Liability may attach under this doctrine "where the

state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177 (citing K*neipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)).

In order to prevail on a state created danger theory, Plaintiff must establish the following elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *Id.* (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

Defendants argue that the first amended complaint should be dismissed because Plaintiff did not sufficiently plead the last element. (Doc. 7-1 at 5). Specifically, Defendants argue that Plaintiff failed to sufficiently allege that the officers took no affirmative acts which increased the danger

to Decedent. (Doc. 7-1 at 5). However, this argument is flatly disputed by the operative complaint.

As Defendants aptly note, "it is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." (Doc. 7-1 at 5). Here, Plaintiff's first amended complaint alleges that "Defendants were aware, or should have been aware, of [D]ecedent's past history and suicidal ideations[,]" and that they failed to "appropriately assess and acknowledge the danger which [D]ecedent posed to herself under the circumstances . . . without providing any further assistance[, which] created the foreseeable and direct harm which . . . occurred in [D]ecedent taking her own life within hours after their departure." (Doc. 6, ¶¶39-40). More importantly, Plaintiff alleges that "Defendants['] action of leaving a clearly suicidal woman to her own devices and further advising her husband to 'leave her alone' constituted an affirmative act which precipitated and caused [D]ecedent's death." *Id.*, ¶44.

Plaintiff is not alleging that the officers were "negligent in failing to recognize a suicide risk, as opposed to a domestic situation," as the Defendants characterize. (Doc. 7-1 at 6). Rather, Plaintiff's facts, taken as true, allege that the officers intervened a mental health crisis, were notified of Decedent's mental health history, affirmatively decided not to call an ambulance, and, most critically, advised Plaintiff to leave his wife alone.

(Doc. 6 at 7). Deferring to the officers' affirmative instructions, Plaintiff left Decedent alone, during which time she took her own life. *Id.*

Because Defendants only challenge the fourth element of the state created danger claim, and because that challenge is without merit, the Court will deny the motion to dismiss with respect to the state created danger claim contained in Count I of the first amended complaint. *Twombly*, 550 U.S. at 570; *see also Hedges*, 404 F.3d 750 (placing the burden on the moving party to show the factual deficiency in the complaint).

**b. *Monell***

Defendants next challenge Plaintiff's state created danger claim against PMRP. (Doc. 7-1 at 7-8). Under the Supreme Court precedent of *Monell v. Dep't. of Soc. Servs.*, a municipality can be held liable under §1983 only if the plaintiff shows that the violation of his federally protected rights resulted from the enforcement of a "policy" or "custom" of the local government. 436 U.S. 658, 694 (1978). A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.'" *Andrews v. Cty. of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. Cty. of Cincinnati*, 475 U.S. 469, 481 (1986)).

A court may also find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." *Cty. of St. Louis v. Praprotnik*, 485 U.S. 112, 139, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. *Cty. of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Moreover, municipalities such as police departments are not liable under §1983 merely for employing someone who violates a person's civil rights; a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *See Mann v. Palmerton Area School Dist.*, 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014) ("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation.") (internal citations omitted); *Beck v. Cty. of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (municipal liability applies "to only those constitutional torts actually caused by the municipality."). The plaintiff bears the burden of identifying the policy or custom. *Id.* This rule ensures

that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. *Id.* Plaintiff can also show a custom by "evidence of knowledge and acquiescence." *Beck*, 89 F.3d at 971.

"Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, liability under [§]1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. Cty. of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (internal citations omitted). As the court in *Poe* explained, such a failure to train or supervise municipal employees "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting 165 F.Supp.3d at 276).

A plaintiff may also show deliberate indifference by presenting evidence that officials were aware of the risk of constitutional violations and the alternatives to preventing such harm, but either "deliberately chose not to pursue these alternatives or acquiesced in a longstanding policy or custom of inaction in this regard." *Simmons v. Cty. of Phila.*, 947 F.2d 1042, 1064 (3d Cir. 1991). The plaintiff must show that the training deficiency has a "'causal nexus' to their injuries[.]" *Kobrick v. Stevens*, No. 3:13-CV-2865, 2017 WL 3839946, at *11 (Sept. 1, 2017) (internal citations omitted).

Further:

> In order for a failure-to-train claim to support *Monell* liability, a plaintiff must show that in light of the duties assigned to [the relevant employees,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.

*Robinson v. Fair Acres Geriatric Cntr.*, 722 Fed.App'x 194, 199 (3d Cir. 2018) (internal quotations and citations omitted).

Defendants argue that Plaintiff "has not alleged any facts upon which it can be concluded that a policy practice or custom of the police department led to a violation of [Plaintiff]'s rights." (Doc. 7-1). Reviewing Count II of Plaintiff's first amended complaint, it is unclear to the Court whether he is claiming that PMRP's policies, practices, and procedures violated Decedent's rights, or his own rights. Because Plaintiff is pleading in his individual and estate-administrator capacities, (Doc. 6), the distinction is important. Indeed, the first amended complaint states:

> [PMRP] failed to develop policies, practices or procedures, or developed and practiced policies or procedures with total disregard to Plaintiff's Constitutional rights, resulting in the violation of such rights . . . As a direct and proximate result of Defendant's actions and failures to act, Defendant has

> fostered, incubated and promoted a conscious disregard for the proper use of police powers, the proper response to the special needs of citizens in danger by the failure to properly train and supervise the individual officers *involved in Plaintiff's arrest, charging and criminal prosecution.*

(Doc. 6 at 8) (emphasis added). Count II of the first amended complaint appears to be drafted for an entirely different Plaintiff, particularly given the wrongful arrest allegation and the fact that Plaintiff's claims have nothing to do with a wrongful arrest. Further, the Court cannot analyze whether PMRP's policies, practices, or procedures violated the rights of an unspecified individual. *Kobrick*, 2017 WL 3839946, at *11. Accordingly, the Court will dismiss Count II of the first amended complaint and allow Plaintiff to leave to amend it to the extent he seeks to assert a well-pleaded (and proofread) *Monell* claim.

**B. Qualified Immunity**

Defendants finally argue that Officers Cinamella and Kspeka are entitled to qualified immunity. (Doc. 7-1 at 6). The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Stringer v. County of Bucks*, 141 F. 4th 76,

84 (3rd Cir. 2025) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Whether qualified immunity can be invoked to shield an official from personal liability turns on the "objective legal reasonableness" of the official's action, "assessed in light of the legal rules that were 'clearly established' at the time it was taken[.]" *Stringer*, 141 F.4th at 85 (internal citations omitted).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). Here, Plaintiff sufficiently pleaded a plausible basis for Decedent's Fourteenth Amendment violation claim. Therefore, the inquiry turns on whether Plaintiff established a plausible claim that Decedent's right was "clearly established" at the time the officers intervened. *Ashcroft*, 563 U.S. at 735.

In *Stringer v. County of Bucks*, the Third Circuit considered whether to deny a motion to dismiss on qualified immunity grounds when the complaint sufficiently detailed a claim for a constitutional violation but was not specific enough to assess whether the right was clearly established at the time it was allegedly violated. 141 F.4th at 81. In that case, Kimberly, who had long struggled with mental illness had been detained, pepper sprayed, and

subjected to chair restraints after an altercation with a neighbor. *See id.* The District Court concluded that the complaint sufficiently pleaded a violation of Kimberly's Fourteenth Amendment rights, and denied the officers' motion to dismiss, reasoning that a "more developed factual record was needed to ascertain whether the [officers] were entitled to qualified immunity." *Id.* at 82. The Third Circuit affirmed. *Id.*

Here, the facts are similar. At this stage, it is objectively plausible that Decedent's Fourteenth Amendment rights were "clearly established" at the time of the intervention. *Ashcroft*, 563 U.S. at 735. Officers Cinamella and Kspeka have not demonstrated that reasonable officers in their position would have engaged in similar conduct. Therefore, a more factually developed record is necessary to determine whether they are entitled to qualified immunity. *Id.* at 82. Granting Defendants' motion to dismiss based on qualified immunity would be premature and a misapplication of clearly established caselaw. *See Iqbal*, 556 U.S. at 678.

## IV. CONCLUSION

The Court concludes that Plaintiff has stated plausible claims upon which relief can be granted. Therefore, Defendants' motion to dismiss will be **GRANTED IN PART** as to Count II of Plaintiff's first amended complaint and otherwise **DENIED.** Finding that a curative amended complaint would not be

inequitable or futile, nor cause undue delay, *Alston*, 363 F.3d at 236, Plaintiff will be granted leave to amend the complaint as to the *Monell* claim (Count II). An appropriate order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/19/26
26-474-01